Okay, the next case this morning is, I'm sorry, it is 21-4035 Hatfield v. Cottages on 78th Community. We will hear that case now. Counsel for appellant who wishes to proceed first, please make your appearance and do so. Thank you, your honor, it will just be me making the argument. May it please the court, this is the case in which no discovery was conducted, no evidentiary hearings were conducted, no motions for summary judgment were filed, there was never any hearing at all, either in person or by Zoom. In fact, this is the first hearing on this case, which is conducted before this court. This appeal centers on Ms. Hatfield's request to this court to apply the correct law to the facts as pled, incorporating reasonable inferences from those facts in the favor of the plaintiff. The standard for all but the two email chains and whether they're privileged is a de novo review, accepting the well-pleaded factual allegations as true and assessing the plausibility of the complaint. According to the 10th Circuit, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw inferences, reasonable inference, a reasonable inference that the defendant is liable for the misconduct alleged. Let me understand one point. On your state law claims, my understanding is it has been your contention that state law summary judgment standards apply to that, not summary judgment, but pleading standards apply to that claim. Those claims, am I correct on that as opposed to the Baltimore standards, that state law standards apply to those claims? Your Honor, I think an argument can be made for that, but I would assert that under any standard the court was in error. Well, is that the argument that you made in your brief that state law standards apply? Nodding is not good enough. Tell me what's the answer. Well, Your Honor, as we alleged in our brief, I do believe the state law standard applies to the state law claims, which would be, it seems to be a slightly more lenient standard for the plaintiff. Well, if you argue the state law standards as to the state law claims, then the question becomes why doesn't that in some sense disqualify you being able to proceed on those claims to begin with? I mean, it's not our job to reconstruct what would happen if we applied the federal standards to those claims. I mean, it is what it is, and I mean, if you apply the wrong legal construct in making your argument, where does that get you? I won't pass judgment now, I'm just asking you for your view, I mean, how do you get out of that problem? So Your Honor, where I hope to head on this is to simply apply the more strict, I guess, version, the Twombly standard, which is the plausibility standard, and argue that all the claims are satisfactory under that standard, which I think avoids the problem. I mean, under that analysis, either way you go, the judge would have not met the standard, or would have erred in applying the standard. Continue. The critical part of this case, and the difficulty with it is there are several claims, and my instinct is simply to just read the complaint, which I'm sure you've done or will do, and walk through the elements of each claim, and demonstrate why well-pled pleadings satisfy the pleading standards, and the claim should not have been dismissed on a motion to dismiss, or the dismissal pursuant to the judgment on the pleadings. But what I want to do is focus on a really important body of facts, a fairly narrow group of facts, and that address, that focus, and highlight some of the errors that the district court made, and at the same time, are pivotal in most of the claims that are at issue. Could I narrow in on one point before you do that, please? This relates to your civil conspiracy claim, or claims. As part of those claims, you have to show an underlying violation. Do you not? Something that the conspiracy related to? I think what you're saying, the bad act, or what the conspirators did that they would cause the implementation of civil conspiracy liability, is that what you're asking? Well, in part. I think what I understood to be the nature of the elements of a civil conspiracy claim is yes, you had to, there was the conspiracy, but you had to have an underlying wrongful conduct that you conspired to do. So that is your understanding, right? Yeah. I was just going to read the exact standard to make this easy for us. The ... I think you're right, but I do want you to just read the standard. I apologize for the delay. There's a lot of things going on in this case. I'm sorry, go ahead. So I have the five elements. Okay, give it. A combination of two or more persons. Yes. An object to be accomplished, a meeting of the minds, one or more unlawful overt acts, and damages as a proximate result thereof. Okay, let's focus on number two, object to be accomplished. If it were to be the case, and obviously I'm not asking you to agree that this is the case, but assuming that the underlying substantive claims as to the object to be accomplished, that you allege these conspirators were involved in conspiring to do, they relate to the underlying substantive claims that are in this case, right? Yes. Okay, well if we were to find that these underlying substantive claims were not sufficient to go forward, would that necessarily mean that the civil conspiracy claims failed too or not? That was the, of course, the decision of the district court judge. That is a, you know, that's a super interesting question, right? If all of the, what we looked at for the unlawful overt acts where all of the claims, the other violations of the law, the defamation, the tortious interference, the violation of the Fair Housing Act, the retaliation, those were how we characterized the unlawful overt acts. If you're saying none of those can go forward, could the conspiracy go forward anyway? It seems to me based on the allegations in the complaint, the answer would probably be no because those are the unlawful overt acts that we pled  So if they're all gone, I think this conspiracy claim goes also. All right. I don't, it's just based on how it's pled, the allegations. Now, again, I want to focus on just a couple of the critical facts and demonstrate the stark difference between what was alleged in the complaint and what the district court found on some of these issues. As you know, there was a, and the complaint works through this, there was some background noise between the parties and ultimately a fine was assessed to Ms. Hatfield over $2,000 under threat of foreclosure. That obviously triggered an escalation. And the first thing that happened was that Ms. Hatfield filed her UALD complaint and that was on August 13th. Two days later, she filed the small claims court lawsuit to try to directly offset the fees that she had to pay to avoid foreclosure of her unit. And on the 27th, she tendered to the HOA's insurance her claims. Now, a lot of it is made of this particular issue. And I want to address this in the context of the HOA's response to these issues. And what they did is, however you look at it, less than 30 days later from all these actions, sent a letter to her employer. Now, the allegations related to this are pretty critical allegations. If you look at the allegations beginning on paragraph 19, on or about September 6th, 2019, Shumway sent a letter to Ms. Hatfield's employer, a true and correct copy of the September 6th, 2019 letter, with its attachments. It's attached here too, as Exhibit 1. The attachments are very important. We'll go through those in a second. Was her employer, let me ask you this, was her employer the same insurance company that had the policy for the HOA? No. Okay. And that gets us right down to, in three or four more allegations, we'll get to why the pretext for sending the letter really makes no sense. The paragraph 20, Ms. Hatfield's employer has no involvement and has never had any involvement in any dealings between Ms. Hatfield and the association except as a result of the September 6th letter. Paragraph 21, the September 6th letter to Ms. Hatfield's employer included a copy of her fair housing complaint. Paragraph 22, the September 6th letter to Ms. Hatfield's employer included two other prior letters sent to Ms. Hatfield from the association both containing embarrassing faults and misleading accusations and allegations. The fine letter and the warning letter. These are just loaded with all sorts of allegations. She almost hit somebody with her car. She's harassing and stalking her neighbors and other allegations. Paragraph 23, the September 6th letter to Ms. Hatfield's employer did not include a response letter drafted by Ms. Hatfield's lawyer and sent to the association that countered and responded to the allegations in the HOA letters. This is a critical fact here. One could argue and the judge assumed, the district court judge assumed that Mr. Shumway just picked up everything that had been sent to the insurance counsel, attached it to a letter, sent it to the insurance, to Ms. Hatfield's employer claiming that she was, that they were confused as to whether they were involved. But they took out a critical letter, the one document in which she defended herself explicitly point by point with her lawyer. They took that out. We may give you a little more time in rebuttal, but the light is red and so your time is concluded now. Let's just pick it up. As I said, we'll see how things go in terms of your adversary's argument and we'll go from there, all right? Your honors may please the court. I'm Axel Trumbo representing the HOA defendants. A handful of volunteer board members, members of the HOA community had a difficult situation on their hands. They, as is clear from the well-plead facts in the complaint, they sincerely believe that there was a problem with Ms. Hatfield's behavior and that they had a responsibility to the community to deal with that problem. All things considered, speaking with an attorney about what to do, discussing things over months about what to do, discussing with the management company, that is the right way to go about it. And they made a decision, even though they knew, again as clear from the emails in the complaint, they knew that it likely would turn into litigation with the way that they understood Ms. Hatfield's stance to be with the HOA. But they decided that it was time to put their foot down and ask a certain behavior. All of that happened long before any filing of an administrative complaint. There are two fundamental problems with Ms. Hatfield's complaint that led to the dismissal correctly. First is that the well-plead facts don't support the exaggerated or speculative conclusions that she makes at critical locations of the complaint. So that's the first critical problem. The second is that she was trying to place a square peg in a round hole. The causes of action that she alleges are not supported by the fact pattern of the case, even as alleged in the complaint. Okay, let me ask you about your first question. So your first question was basically like a Twombly-Iqbal argument, right? That she alleges some facts, but the facts don't support her cause of action. Really all she has are conclusory statements that would back up her causes of action. Correct. Okay. Correct. Now, one example. She cites to these emails as evidence of a conspiracy that was being formed. But when you read the emails, there's no mention of assertion of Fair Housing Act rights. There's no mention of let's make something up. There's no support for it whatsoever when you look at the actual facts and not just the conclusions that are being made. Another example. The letter that the HOA sent to the membership on September 10th of 2019. She alleges in her complaint that that letter suggests and implies that she was a physical threat to the other members of the community. That's her allegation. Judge Stewart properly read the letter and saw that there is absolutely nothing that even remotely suggests her being a physical threat. It just is not there. It's an exaggerated statement in her complaint. What about if you have problems, call the police? That sounds like she's dangerous. So that wasn't in the September 10th letter. We're talking now about the October membership meeting. Now, important facts surrounding that that are all in the complaint and the attached documents. This was a pre-existing meeting that was scheduled. Ms. Hatfield, now this is a document that we attached that was referenced that there is no objection about, but Ms. Hatfield in July of 2019, she outs the issue of the membership, explains that she's being illegally harassed by the HOA, and she invites everybody in the membership to go to that meeting in hopes of getting a new board put in. So she invites everybody to become outraged, talks about how expensive this issue is, and then when the October meeting happens and members are upset and asking questions like, why do we have to pay for this? What are our rights? And the HOA is forced to field questions. What else could they do but to answer as best they can? What she alleges is that a member of the community, not a board member, but a member, said something along the lines of, I personally don't feel safe anymore leaving my house. That member, he or she, we don't know, didn't mention Hatfield specifically, but Hatfield is reading between the lines and saying that that's who they were talking about. The response was, probably the best thing you can do in that situation, which is, well, if anybody feels unsafe, you could always go to the police. So that certainly does not rise to the level of a violation of the Fair Housing Act. What about where counsel left off, which is Mr. Shumway assembling various materials, which undoubtedly are going to be embarrassing to her, and sending it to her employer, Cincinnati Insurance, without even checking, is Cincinnati involved in this or something? Well, if you want an authoritative answer as to whether Cincinnati does have, is asserting some sort of involvement in the case, you go to somebody like a corporate person in Fairfield, Ohio, and ask, yes or no, are you involved? He didn't send it to Ms. Hatfield's direct supervisors. And in terms of the attachments, I'm glad that was brought up, because Judge Stewart made a couple of very important findings on that. First is that the attachments that are being complained about, those were attached and submitted by Ms. Hatfield in relation to the small claims action. And so those were attached to that complaint, and that's how they were submitted to the employer as well. Another point, more directly to your question, Judge Phillips, is that what Shumway did, is he attached first documents that were in Ms. Hatfield's own words, in her favor, explaining that she was in the right and the HOA was in the wrong. So it started with the administrative complaint, which is all talking about her in a positive light and the HOA in a negative light. Then he attached the small claims action, in which she claims that the HOA, again, in her favor, was illegally assessing fines and fees against her. And it's only after that, that there are a couple of letters that are attached, which are the subject of the small claims affidavit, where there's the wording and the fines. Now, the reason he sent those was because in August 27th and August 28th of 2019, Ms. Hatfield deceived, at least in their view, deceived the HOA's insurance agent. So she sent a couple of emails with her Cincinnati insurance credentials as an insurance agent. Well, what does that mean, that it had a banner on the top of the email or that it had an insignia, this is from Cincinnati? She worked at Cincinnati. She sent it from where there's a connection to Cincinnati. I get that much. But you're suggesting there's more, that she's pulling Cincinnati into this as a big club to beat the HOA over the head with. What supports that? Not that she's beating the HOA over the head with Cincinnati, but that she went around the HOA board's ability to make a decision about whether to submit the claims to insurance by sending a very terse, short email that reads like one insurance agent sending something to another insurance agent with her insurance credentials, using her employer's domain name, saying, here's a new claim, please submit it to such and such insurance companies. And that misled the insurance agent into actually following through with that. And so with that context in mind, what Shomoy did is he sent a letter, again, all the way to Fairfield, Ohio, saying this is the situation that happened, an insurance professional was misled by this and thinks that Cincinnati maybe has some involvement. Confirm yes or no. Do you have involvement with these claims? And here are attachments, if you need it, describing what the claims are. Now, if this were an employer other than an insurance company, potentially we're starting to get close to something that's concerning. But Cincinnati Insurance Company deals with litigation all the time. It's not plausible to think that there were any eyebrows raised by seeing documentation like this, which is what they see day in and day out. And we know that Ms. Hatfield doesn't have any proof of any actual employment consequence because she doesn't allege any of that in her complaint. She doesn't explain any sort of negative implications. Now, the final point I'll make on that is that for there to be a Fair Housing Act claim under retaliation, the actions must be motivated by the protected person's assertion of their housing rights. And it must be, at least in part, motivated by an intent to discriminate based on a protected class. None of those elements are met. And courts look to factors when you have one single incident, courts look to factors like the severity of the incident and the frequency to see whether it even meets the standard of retaliation under the statute. Now, I want to hit a couple points in terms of... I want to hit a couple points in terms of the... the conclusory nature of her key allegations. One good case to look at is the Kalik versus United Airlines case from this court. So in that case, Ms. Kalik, she actually did allege her race, ethnicity, religion, and that those were in the minority. She did allege that there was an intent to discriminate against her based on those facts. That's missing in this case. But what she didn't do is support her allegation of retaliation with any actual factual matter. So in that case, she said she was a good employee. She started complaining internally about discrimination, FMLA, other factors, and then she was fired. She said the reasons they gave for my firing, they were exaggerated, they were false. The real reason was retaliation. This court upheld a dismissal of that complaint because she didn't give sufficient information about the context of her firing to bring her claim from being conceivable to plausible. That's the same situation we have here with Ms. Hatfield. She's saying that these fines that were made against her, these accusations about harassment, things like that, she's saying these were a pretext, there was nothing to it, it was all discrimination and retaliation. Well, she doesn't give any detail about what the actual context was. She doesn't provide the factual matter that would plausibly show, you know what, this is more than just conceivable, this is plausible, especially in light of the fact that the HOA's actions after her administrative complaint are completely in line with what they were talking about all the way back in December of 2018 and March of 2019. Let me touch on your counterclaim for a second, please. As it relates to, at one point, there's a sequence of events that are pled, and then the conclusion, or at least the suggestion that should be drawn from that, the sequence of events involving Ms. Hatfield, is that her ulterior motive for filing the administrative complaint was something other than to actually prosecute that complaint. I'm just trying to understand, now that we're talking about your allegations, what's the best case that we can infer just from a sequence of events, this happened, this happened, this happened, that somehow or other there was an ulterior motive for her filing that complaint? Your Honor, we may have fallen into the same problem of seeing a conspiracy. We certainly would encourage the court to uphold Judge Stewart's rulings below, but if this court views the Iqbal case differently and says that there's enough for her claims to continue, then our claims should as well. Thank you. Yes, thank you, Counsel. All right, we'll allow you one minute to rebuttal. Thank you, Your Honors.  Chumway, the lawyer that drafted the letter to Ms. Hatfield's employer, had already been dealing with Ms. Hatfield for over six months. He drafted the warning letter and the fine letter. He already knew Cincinnati was not involved. All of the exhibits to the emails that went to the insurance company related to direct claims either against or by Ms. Hatfield. There was no way to look at those exhibits and think Cincinnati was involved. How did, well, in his letter, he says that the agent for the insurer believed, I think, quote, the agent believed the demand for tender was legitimate and should be processed. I mean, so somebody believed that this was a legit request from insurer to insurer, right? Two issues there, Your Honor. First, if the agent was actually confused, the moment he spoke to Mr. Chumway, Mr. Chumway could have cleared everything up and said, oh no, that's Wendy. She lives in the association. Look at the attachments. This has nothing to do with Cincinnati. That would have ended that. The second thing is, and this is really the red herring, all this evidence is coming out of the air that there's some magic required to tender a claim, that you have to be an insurance agent. That's all false. There's no evidence of that, no allegations of that. In fact, the inference is exactly the opposite and the truth is the opposite. Any owner in an HOA can tender a claim. The only coincidence that occurred here is Ms. Hatfield happened to use her work email on one of the two emails that she sent. The first one she didn't. All right, I'm going to need to cut you off. The second one she did. I'm going to need to cut you off here over time. All right, unless there are any questions. Thank you, counsel, both of you for your fine arguments. Case is submitted.